UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ⎧
JOHN ANDRE,

              Plaintiff,                         CASE NO.: _____

       -against-

CARRIZO OIL & GAS, INC., S.P. JOHNSON
IV, STEVEN A. WEBSTER, F. GARDNER
PARKER, FRANCES ALDRICH SEVILLA-
SACASA, THOMAS L. CARTER, JR.,
ROBERT F. FULTON, ROGER A. RAMSEY,
FRANK A. WOJTEK and F. GARDNER
PARKER,

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ⎧

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

       Plaintiff John Andre ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

       1.     This is an action brought by Plaintiff against Carrizo Oil & Gas, Inc. ("Carrizo" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Carrizo, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of Callon Petroleum Company ("Callon") with Carrizo.

2.      On July 14, 2019, Callon and Carrizo entered into an Agreement and Plan of Merger (the "Merger Agreement"), providing for Callon's acquisition of Carrizo, pursuant to a merger between Callon and Carrizo, with Callon as the surviving corporation (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, Carrizo shareholders will receive 2.05 shares of Callon common stock for each share of Carrizo common stock they own (the "Merger Consideration").

4.      On August 20, 2019, in order to convince Carrizo's public common shareholders to vote in favor of the Proposed Transaction, Defendants took a step forward and authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Carrizo and Callon; and (ii) the key inputs for the financial analyses performed by RBC Capital Markets, LLC ("RBCCM and Lazard Frères & Co. ("Lazard") to support their fairness opinions.

6.      The Proposed Transaction is expected to close in the 4th quarter this year and the special meeting of the Company's shareholders to vote on the Proposed Transaction can be scheduled at any time.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting of Carrizo shareholders so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed

Transaction unless and until the material information discussed below is disclosed to Plaintiff and Carrizo's public common shareholders sufficiently in advance of the special meeting of the Company's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Indeed, Carrizo's common stock is listed and traded on NASDAQ, which is also headquartered in this District.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of Carrizo common stock.

12.     Defendant Carrizo is a Texas corporation that maintains its principal place of business at 500 Dallas Street, Suite 2300, Houston, Texas 77002.  Carrizo's common shares are traded on NASDAQ under the ticker symbol "CRZO."

13.     Defendant S.P. Johnson IV is, and has been at all relevant times, a director, President and CEO of the  Company.

14.     Defendant Steven A. Webster is, and has been at all relevant times, a director of the Company and Chairman of the Board.

15.     Defendant F. Gardner Parker is, and has been at all relevant times, a director of the Company.

16.     Defendant Frances Aldrich Sevilla-Sacasa is, and has been at all relevant times, a director of the Company.

17.     Defendant Thomas L. Carter, Jr., is, and has been at all relevant times, a director of the Company.

18.     Defendant Robert F. Fulton is, and has been at all relevant times, a director of the Company.

19.     Defendant Roger A. Ramsey is, and has been at all relevant times, a director of the Company.

20.     Defendant Frank A. Wojtek is, and has been at all relevant times, a director of the Company.

21.     The defendants identified in paragraphs 13 through 20 are collectively referred to

4

herein as the "Board" or the "Individual Defendants," and together with Carrizo, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     Carrizo is a Houston-based energy company which, together with its subsidiaries, is actively engaged in the exploration, development, and production of crude oil, natural gas liquids ("NGLs"), and natural gas from resource plays located in the United States. Carrizo's current operations are principally focused in proven, producing oil and gas plays in the Eagle Ford Shale in South Texas and the Permian Basin in West Texas.

23.     Callon has been engaged in the development, acquisition, and production of oil and natural gas properties since 1950. Callon is focused on the acquisition and development of unconventional onshore oil and natural gas reserves in the Permian Basin. The Permian Basin is located in West Texas and southeastern New Mexico and is comprised of three primary sub-basins: the Midland Basin, the Delaware Basin, and the Central Basin Platform. For more than a decade, Callon has been focused on the Midland Basin and entered the Delaware Basin through an acquisition completed in February 2017 and has further expanded its presence in the Delaware Basin through acquisitions in 2018.

24.     On July 14, 2019, the Board caused the Company to enter into the Merger Agreement.  Pursuant to the terms of the Merger Agreement, each outstanding share of Carrizo common stock will be converted into the right to receive 2.05 shares of CALLON common stock.

25.     On July 15, 2019, Carrizo and Callon issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

**Callon to Acquire Carrizo in All-Stock Transaction**

**Creates a Premier Oil-Weighted Mid-Cap with Peer-Leading
Capital Efficiency and Cash Margins**

**Materially Increases Scale with Over 100,000 Boe/d of Pro-Forma 1Q19 Production and 200,000 Net Acres in the Prolific Permian Basin and Eagle Ford Shale**

**Highly Complementary Delaware Basin Footprint of Over 90,000 Net Acres to Accelerate Scaled Operations and Leverage Shared Infrastructure to Unlock Additional Value Immediately Accretive to EPS, CFPS, Debt-Adjusted Growth**

**Per Share and Net Asset Value Per Share; Double-Digit Production Growth and Over $100 Million of Free Cash Flow in 2020 at Current Strip Pricing**

**Stock-for-Stock Transaction Maintains Strong Balance Sheet and Flexibility to Execute Full-Field, Large-Scale Pad Development**

**Expects to Realize Primary Annual Run-Rate Synergies of $100 - $125 Million in Addition to Optimized Capital Allocation Over Time**

**Companies to Host Investor Conference Call Today at 8:30 a.m. ET / 7:30 a.m. CT**

**Callon Petroleum Company (NYSE: CPE) and Carrizo Oil & Gas, Inc. (Nasdaq: CRZO)** today announced that their Boards of Directors have unanimously approved a definitive agreement under which Callon will acquire Carrizo in an all-stock transaction valued at $3.2 billion. This highly complementary combination will create a leading oil and gas company with scaled development operations across a portfolio of core oil-weighted assets in both the Permian Basin and Eagle Ford Shale.

Under the terms of the agreement, Carrizo shareholders will receive a fixed exchange ratio of 2.05 Callon shares for each share of Carrizo common stock they own. This represents $13.12 per Carrizo share based on Callon's closing common stock price on July 12 and a premium of 18% to Carrizo's trailing 60-day volume weighted average price. Following the close of the transaction, Callon shareholders will own approximately 54% of the combined company, and Carrizo shareholders will own approximately 46%, on a fully diluted basis. The all-stock transaction is intended to be tax-free to Carrizo shareholders.

"We are excited about this transformational transaction, creating a

6

differentiated oil and gas company by integrating core asset bases in premier basins. Together with Carrizo, we will accelerate our free cash flow, capital efficiency and deleveraging goals through an optimized model of large-scale development across the portfolio. We will also benefit from leading cash margins to navigate commodity price volatility and allow for reliable, continuous development of the combined asset base. With a deep inventory of high rate-of-return well locations in well-established areas and substantial upside opportunities for organic inventory delineation, we will be able drive differentiated growth deploying our life-of-field development model for many years to come," said Joe Gatto, President and Chief Executive Officer of Callon. "As a larger organization, Callon will be well-positioned to benefit from an expanded infrastructure footprint and critical mass for our production marketing and supply chain functions and also leverage our technology and data capture initiatives across a broader base. Importantly, this combination brings together two organizations grounded in strong values and a shared commitment to responsible operations, integrity, and a drive to deliver leading results. We look forward to welcoming Carrizo's employees and joining forces as a Houston-based company focused on the development of a premier Texas asset base to create enhanced value for all of our stakeholders."

S.P. "Chip" Johnson, IV, President and Chief Executive Officer of Carrizo, commented, "We believe that Callon is the ideal partner for Carrizo. Through our combination, we bring together a strong foundation of Midland Basin and Eagle Ford Shale assets and overlay a substantial Delaware acreage position and value proposition that will be unlocked through an integrated plan of large-scale program development. This all-stock transaction provides Carrizo shareholders with the opportunity to participate in the significant near- and long-term upside potential of the merged company. We look forward to a bright future for our employees and all of our stakeholders and expect a seamless integration."

**Strategic and Financial Benefits of the Transaction**

•       Increases Corporate and Delaware Basin Scale: On a pro forma basis, Callon will have an approximate 200,000 net acre footprint in the Permian Basin and Eagle Ford Shale, including over 90,000 net acres in the Delaware Basin, and approximately 2,500 total gross horizontal drilling locations. The companies produced a combined 102.3 MBoe/d in 1Q19 (71% oil) and generated pro forma LTM 1Q19 adjusted EBITDAX of $1.2 billion. With an expected

total of 9 to 10 drilling rigs and 3 to 4 completion crews working during the course of 2020, predominantly in the Permian Basin, the combined entity will have the critical mass to realize supply chain savings and sustain simultaneous operations initiatives.

•       Expands Portfolio of Complementary High-Quality Assets: Together with Carrizo, Callon will be a premier Texas operator with an extensive inventory of core Permian and Eagle Ford locations that compete for capital on a full-cycle basis. As a portfolio, our increased level of large project initiatives in the Permian Basin will be balanced by sustained investment in shorter cycle and less capital-intensive projects in the Eagle Ford Shale. Based on initial plans for capital allocation within the combined portfolio, Callon forecasts its free cash flow breakeven WTI crude oil price to progress to under $50/Bbl by 2021.

•       Accelerates Free Cash Flow Generation: Callon expects this combination to be immediately accretive to free cash flow per share in 2020 with positive free cash flow generation of over $100 million at current strip pricing1 while maintaining double-digit production growth. The combination brings together a well-established and repeatable free cash flow generating business in the Eagle Ford Shale with Permian Basin assets that are rapidly transitioning to positive net cash flows with increasing investment in high-return projects. In addition, the combined company's corporate free cash flow will be increased through an optimized development plan in addition to corporate cost savings. This sustained free cash flow generation will accelerate Callon's deleveraging initiatives and improve its capacity to return capital to shareholders in the future.

•       Maintains Callon's Financial Strength and Flexibility: Callon expects to have an enhanced credit profile due to broader scale and scope, and a substantial base of oil-weighted proved developed producing reserves. Importantly, significant free cash flow generation will drive the combined company's leverage ratio to below 2.0x in 2020 at current strip pricing. Additionally, upon closing, the combined company is anticipated to have pro forma liquidity of more than $1 billion under a new underwritten credit facility combined with no near-term debt maturities.

•       Drives Substantial Identified Synergies: The combination is expected to generate a total of $850 million in net present value from

the following categories of primary synergies:

•      Annual run-rate operational synergies of $65 to $80 million attributed to a structural shift in the combined program development model, consisting of:

•      Expanded large scale development in the Permian Basin, deploying simultaneous drilling and completion operations, improving production cycle times and reducing well costs;

•      Optimized, integrated development schedule to capture efficiencies from continuous utilization of dedicated completion crews; and

•      Improved uptime from concentrated development, resulting in reduced production downtime from offsetting completion operations.

•      Estimated annual cash general and administrative savings of $35 million to $45 million.

•      Optimized capital allocation initiatives, including a mix of shorter and longer cycle projects, select activity acceleration within a larger cash flow base and high-grading of drilling inventories.
In addition, Callon has identified further synergies that are anticipated to be realized over time:

•      Integration of Delaware infrastructure and water management, expanding the opportunity for water recycling programs and increasing scale for potential monetization structures;

•      Larger portfolio of non-core acreage for divestment and trades, high-grading overall returns on capital;

•      Increased hydrocarbon volumes provide critical mass for marketing arrangements and ongoing initiatives to control critical

parts of the value chain, including firm transportation on pipelines; and

• Cost of capital reductions, including opportunistic debt refinancings.

**Governance and Leadership**

The transaction has been unanimously approved by the Boards of Directors at both Callon and Carrizo. In addition, each of the Carrizo directors has committed to vote his or her shares in favor of the transaction.

Upon closing, the Board of Directors of the combined company will consist of 11 members, including Callon's eight current Board members and three to be appointed from the Board of Carrizo. The combined company will be led by Callon's executive management team and will remain headquartered in Houston, Texas.

**Timing and Approvals**

The transaction, which is expected to close during the fourth quarter of 2019, is subject to customary closing conditions and regulatory approvals, including the approval of shareholders of both companies.

**The Proxy Omits Material Information**

26.      On August 20, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

27.      First, the Proxy fails to provide enough information regarding financial projections for the Company.  In particular, the Proxy fails to disclose: (i) Carrizo and Callon's unlevered free cash flows and/or after-tax free cash flows and its line items; (ii) all line items used to calculate Carrizo's Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to

GAAP metrics.  Second, the Proxy omits material information regarding RBCCM and Lazard's financial analyses.

28.     Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation.  Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair compensation given Carrizo's projected cash flows?  Without Carrizo and Callon's unlevered free cash flows the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

29.     Defendants' failure to disclose all line items used to calculate Adjusted EBITDA and a reconciliation of all non-GAAP to GAAP metrics similarly renders the Proxy materially misleading.

30.     With respect to RBCCM's *Discounted Cash Flow Analysis* (the "DCF") for Carrizo and Callon, the Proxy fails to disclose the reviewed historical WACC for Carrizo/Callon and the selected companies observed to derive a discount rate of 9.5% to 11.5% and 9.0% to 11.0%, respectively,  as well as the basis for selecting terminal multiples ranging from 3.00 x to 4.00x 2023E Adjusted EBITDA for Carrizo and terminal multiples ranging from 3.75x to 4.75x 2023E Adjusted EBITDA terminal value for Callon.  *Id.* at 116, 118.  Moreover, RBCCM's *Discounted Cash Flow Analysis* is based on unlevered free cash flows of Carrizo and after-tax free cash flows of Callon but yet the cash flows used are nowhere to be found in the Proxy.

31.     With respect to the *Net Asset Value Analyses* for Carrizo and Callon, the Proxy fails to disclose the basis to select the same discount rate used in the DCF, although it was based

only on Carrizo and Callon's WACC as supposed to also based on the selected companies observed and considered in the DCF.

32.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . .  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

33.     With respect to RBCCM' *Selected Companies Analyses* for Carrizo and Callon, the Proxy failed to disclose the reason for only choosing comparable companies for Callon from the Permian Basin, even though Callon significantly expanded its operations into the Delaware Basin in 2018. *Id.* at 117.  In contrast, RBCCM included companies from the Permian Basin and Eagle Ford when performing the Selected Companies Analysis for Carrizo.  *Id.* at 115.

34.     With respect to RBCCM's *Analysts' Price Targets* for both Carrizo and Callon the Proxy is also materially misleading.  Specifically, it fails to disclose the critical price targets for either company or the sources thereof or whether the same analysts provided price targets for the two companies.  *Id.* at 120.

35.     With respect to RBCCM's *Transaction Multiples Analysis* for Carrizo and Callon the Proxy is similarly insufficient and materially misleading.  In particular, the analysis fails to disclose whether the selected oil companies were restricted to the Permian Basin and Eagle Ford, as in the *Selected Companies Analysis*, or whether it included other regions in selecting such companies for the *Transaction Multiples Analysis*.  *Id.* at 120.

36.     The Proxy also discloses that RBCCM and/or certain of its affiliates have been asked by Callon to participate in the pro forma combined company's new credit facility, a portion of which may be drawn at the effective time of the merger to fund certain transaction related expenses, but fails to disclose the amount of the credit facility or the anticipated consideration RBCCM will receive.  *Id.* at 122.

37.     With respect to Lazard's analyses, it is not disclosed why Lazard did not perform a DCF, which is a standard valuation methodology.

38.     With respect to Lazard's *Net Asset Value Analyses* (NAV), the Proxy omits entirely the "risk factors based on oil and gas reserve categories" that Lazard applied in reaching its conclusions.  *Id.* at 125.

39.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

40.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's shareholders, Plaintiff will be unable to cast an informed vote regarding the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Carrizo and CALLON; (ii) the background process leading up to the execution of the Merger Agreement; and (iii) potential

conflict of interests affecting certain members of the Board.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's common shareholders although they could have done so without extraordinary effort.

47.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board, Carrizo's management, Carrizo's outside legal counsel, all reviewed and assessed financial projections for Carrizo, and further states that the Board considered the fairness opinion provided by RBCCM and/or Lazard and the assumptions made and matters considered in connection therewith, which included financial projections for Carrizo and Callon.  Further, the Individual Defendants were privy to and had knowledge of the projections for Carrizo and Callon and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the

procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

49.     Carrizo is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

50.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a)
### of the Exchange Act

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Carrizo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Carrizo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

55.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 28, 2019

**MONTEVERDE & ASSOCIATES PC**

 */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*